## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GREGORY JOSEPH NEIFERT,** | : | **Civil No.  1:21-CV-1780** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **KILOLO KIJAKAZI**, | : | |
| **Acting Commissioner of Social Security** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

## I.    Factual Background

For Administrative Law Judges (ALJs), Social Security disability determinations frequently entail an informed assessment of competing medical opinions coupled with an evaluation of a claimant's subjective complaints. Once the ALJ completes this task, on appeal it is the duty and responsibility of the district court to review these ALJ findings, judging the findings against a deferential standard of review which simply asks whether the ALJ's decision is supported by substantial evidence in the record,  see 42 U.S.C. § 405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012), a quantum of proof which "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). This informed assessment by the ALJ, however, must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981).

In the instant case, an ALJ denied a disability application submitted by Gregory Neifert, who applied for disability benefits in 2016 alleging disability due to a traumatic brain injury he suffered in December of 2012. This was the second decision by the ALJ, the first having been remanded by this court due to prejudice Mr. Neifert had suffered because of his *pro se* status at the initial administrative hearing. This second decision by the ALJ, however, contains an internal inconsistency. Specifically, the ALJ's residual functional capacity ("RFC") finding stated that Neifert could perform a range of work at all exertional levels with some nonexertional limitations, but the decision later stated that the medical evidence indicated that "the claimant was capable of performing a range of sedentary work within the above parameters."

The ALJ's decision did not explain, or even acknowledge, this internal inconsistency. The inconsistency was then compounded by the fact that Mr. Neifert was an individual closely approaching advanced age at the time of his date last insured, and further, the jobs identified by the vocational expert and which the ALJ

found Neifert could perform were all medium exertional level jobs. Thus, what we are faced with is a decision that assigns two vastly different residual functioning capacities to Mr. Neifert, enabling him to perform work at either all exertional levels or at a sedentary exertional level, and subsequently finds that there are jobs in the national economy that Neifert can perform at the medium exertional level.

Given these inherently contradictory findings, we cannot conclude that substantial evidence supports the ALJ's decision in this case. Accordingly, we will remand this case for further consideration by the Commissioner.

## II.   <u>Discussion</u>

### A.   <u>Substantial Evidence Review – the Role of this Court</u>

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 200 (3d Cir. 2008); <u>Ficca v. Astrue</u>, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.

3

Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D.Pa. 2003).

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence." )(alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal

4

matters is plenary); <u>Ficca</u>, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." <u>Zirnsak v. Colvin</u>, 777 F.3d 607, 611 (3d Cir. 2014) (citing <u>Rutherford</u>, 399 F.3d at 552). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." <u>Burnett v. Comm'r of Soc. Sec. Admin.</u>, 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In <u>Burnett</u>, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. <u>Id</u>. at 120; <u>see Jones v. Barnhart</u>, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "<u>Burnett</u> does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." <u>Jones</u>, 364 F.3d at 505.

<u>Diaz v. Comm'r of Soc. Sec.</u>, 577 F.3d 500, 504 (3d Cir. 2009).

5

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

### B.   Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Title II of the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

6

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.   20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").   20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC).   RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e),   404.1545(a)(1),   416.920(e),   416.945(a)(1).     In   making   this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.  20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the

physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in

the factual setting where a well-supported medical source has opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings, 129 F.Supp.3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and

9

recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064.  Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.  20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence.  Id. at 706-707.  In addition, "[t]he ALJ must indicate in

10

his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

**C.      This Case Will Be Remanded for Further Consideration and Articulation of the Grounds for the ALJ's Decision.**

As we have noted, it is axiomatic that an ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter, 642 F.2d at 704. Furthermore, the ALJ must also "indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck, 181 F.3d at 433. In the instant case, we conclude that the ALJ's RFC determination is not supported by an adequate explanation.

 Here, the ALJ's second decision denying Mr. Neifert's application for benefits contains an internal inconsistency that is not addressed, acknowledged or explained by the ALJ. On this score, the RFC determination limits Mr. Neifert to a range of work at all exertional levels with some nonexertional limitations:

> After careful consideration of the entire record, the undersigned finds that through the date last insured, the claimant has the residual functional capacity to perform *a full range of work at all exertional levels* but with the following non-exertional limitations. The claimant: must avoid exposure to unprotected heights and dangerous moving machinery; is limited to work requiring no more than a reasoning level of two, but not performed at a production-rate pace; is limited to no more than occasional changes in the work setting; and is limited to no

11

more than occasional interaction with supervisors, coworkers, and the public.

(Tr. 1570) (emphasis added). The ALJ discusses the medical record, the opinion evidence, and Neifert's testimony from the administrative hearing. Notably, Mr. Neifert testified that he had some physical limitations, including that he has some trouble walking and trouble keeping his balance. (Tr. 1599-1600). Ultimately, the ALJ found that Mr. Neifert was not as limited as he alleged.

However, although the ALJ's RFC limited Neifert to work at all exertional levels, following his discussion of the medical records and opinion evidence, the ALJ stated:

> In sum, after considering the record as a whole, including the objective diagnostic tests and clinical findings on physical and mental examinations, the claimant's longitudinal treatment history, and his documented activities of daily living, the undersigned finds that, through the date last insured, *the claimant was capable of performing a range of sedentary unskilled work within the above parameters.*

(Tr. 1576-77) (emphasis added). Thus, there is an inherent contradiction within the ALJ's decision that is not explained by the ALJ. This contradiction, in turn, is compounded by the ALJ's finding at step 5 of the sequential analysis, which found that there were medium exertional level jobs that Neifert could perform. (Tr. 1577-78).

Further, this contradiction may have even greater significance due to the fact that at the time of his date last insured, Mr. Neifert was an individual closely approaching advanced age, since the Secretary has promulgated guidelines on disability determinations that account for a claimant's physical abilities, age, education, and vocational skills as well as other factors, such as their RFC. See 20 C.F.R., Part 404, Subpart P, Appendix 2. These guidelines prescribe various grids, and persons who fall within the grids may be defined as disabled by application of these rules. This rule-making process relieves the Secretary of the need to rely on vocational experts by establishing, through rulemaking, the types and numbers of jobs that exist in the national economy where a claimant's qualifications correspond to the job requirements identified by a particular rule. Heckler v. Campbell, 461 U.S. 458, 461–62, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). These regulations provide that the grids will direct a conclusion as to whether an individual is or is not disabled where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule. 20 C.F.R. pt. 404 Subpt. P Appx. 2, § 200(a).

Under these Medical Vocational guidelines, if Neifert—a person who is closely approaching advanced age—was found to be able to only undertake sedentary work, the grids may have mandated a finding that he was disabled. See 20

C.F.R., Part 404, Subpart P, Appendix 2, § 201.12. Thus, resolution of these inconsistencies could change the outcome of this case since if the ALJ found that Neifert could only perform sedentary work the grids may compel a determination that he was disabled. When apparent internal inconsistencies in an ALJ's residual functional capacity assessment may have an outcome determinative impact upon a social security determination under the Medical Vocational Guideline grids, courts recognize that a remand to clarify these inconsistencies is often necessary. Compare Campbell v. Astrue, Civ. No. 09–5356, 2010 WL 4689521 (E.D. Pa. Nov.2, 2010), with Anderson v. Astrue, 825 F.Supp.2d 487, 496 (D. Del. 2011). In this case, since the difference between a residual functional capacity to perform either sedentary work or work at all exertional levels may determine the outcome of this case, and the ALJ's assessment of Neifert's residual functional capacity is marked by these internal inconsistencies, a remand of this case is required to clarify this question.

Finally, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Rather, the task should remain the duty and province of the ALJ on remand. Further because we have concluded that a remand is necessary on these grounds, we do not reach any other claims of error advanced by Neifert. Those other issues may be addressed in the first instance by the ALJ on remand.

14

**III.    <u>Conclusion</u>**

Accordingly, for the foregoing reasons, IT IS ORDERED that this case be REMANDED for further consideration of the Plaintiff's application.

An appropriate order follows.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge